IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:16-CV-79-FL

| | |
|---|---|
| SIDNEY LEWIS, JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| BRENTON BENT, individually and in his ) | |
| official capacity as a Community Code ) | |
| Supervisor for the City of Rocky Mount, ) | |
| North Carolina; JONATHAN L. BOONE, ) | |
| individually and in his official capacity as ) | |
| the Director of Public Works and Water ) | |
| Resources for the City of Rocky Mount, ) | |
| North Carolina; and CITY OF ROCKY ) | |
| MOUNT, NORTH CAROLINA,[1] ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion for summary judgment. (DE 33). The motion has been fully briefed, and, in this posture, the issues presented are ripe for ruling. For reasons noted, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiff initiated this action May 31, 2016, by motion to proceed in forma pauperis, which motion was granted November 17, 2016. Plaintiff's complaint was filed that day. Plaintiff sues defendants Brenton Bent ("Bent") individually and in his official capacity as Community Code Supervisor for the City of Rocky Mount, North Carolina ("Rocky Mount"), Jonathan L. Boone

---

[1] Where this court dismissed plaintiff's claims against defendant Edgecombe County, North Carolina by order dated May 24, 2017, the caption is constructively amended so to reflect.

("Boone") individually and in his official capacity as Director of Public Works and Water Resources for Rocky Mount, and Rocky Mount. Plaintiff asserts claims arising out of allegedly racially discriminatory enforcement of city ordinances pertaining to home upkeep and safety, unlawful arrest by a non-party police officer, and takings without just compensation. Defendant Rocky Mount counterclaims for payment of civil fines and costs of abating a nuisance on plaintiff's property.

Following a period of discovery, defendants filed the instant motion for summary judgment. In support of the motion, defendants rely on affidavits of Boone, Bent, and Sharon H. Sprinkle, documentary evidence of proceedings resulting in adjudication by defendant Rocky Mount that plaintiff's home did not comply with municipal ordinances, and order of a North Carolina magistrate issued August 28, 2013, the day plaintiff was arrested, finding probable cause for arrest and approving plaintiff's detention. In opposition, plaintiff directs the court's attention to the same evidence, and, in addition, plaintiff relies upon allegations in his verified complaint and a letter addressed to Lamont Wiggins dated September 7, 2012.

### STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts viewed in the light most favorable to plaintiff may be summarized as follows. Defendant Rocky Mount is a North Carolina municipal corporation. (DE 14 ¶ 10). At all relevant times, defendant Benton Bent ("Bent") was the community code supervisor within Rocky Mount's Department of Public Works, Community Code Enforcement Division ("Code Enforcement"). (DE 35-3 ¶ 1). Defendant Jonathan L. Boone ("Boone") served as director of Rocky Mount's Department of Public Works. (DE 35-2 ¶ 1).

Plaintiff is a 71 year old black male. (DE 4 ¶ 7). Plaintiff lives and owns the property at 319 Marigold Street in Rocky Mount. (Id. ¶ 17).

2

After receiving complaints about the conditions of plaintiff's property, a Rocky Mount inspector conducted an inspection on April 14, 2011. (DE 35-2 ¶ 6). The results of inspection, which indicate numerous violations of the Rocky Mount housing code, are memorialized in a housing inspection form taken into the record at DE 35-5. A complaint and notice of hearing dated June 6, 2011 was delivered to plaintiff advising of housing code violations. (DE 35-6). The complaint and notice of hearing advised plaintiff that a hearing would be conducted June 22, 2011, where plaintiff would be afforded opportunity to contest any findings of the April 14, 2011, inspection. (Id. at 2).

After the June 22, 2011, hearing, Code Enforcement issued an order to repair, directing plaintiff to bring his property in compliance with the housing code no later than September 20, 2011. (DE 35-7). Plaintiff appealed the order to the Community Appeals Board, which body is established to entertain appeals of that nature. The Community Appeals Board initially tabled plaintiff's appeal with stipulation that plaintiff clean a room in his home that presented safety issues and resolve certain issues with electrical outlets. (DE 35-2 ¶ 10). The appeal hearing was rescheduled for May 31, 2012.

On May 31, 2012, the Community Appeals Board held the scheduled hearing, and, by decision rendered June 1, 2012, affirmed the order to repair and extended plaintiff deadline for compliance to August 29, 2012. (DE 35-8). The Community Appeals Board's decision notified plaintiff of his right to appeal to North Carolina superior court within 15 days. (Id.). Plaintiff did not appeal to superior court.

After the August 29, 2012, deadline elapsed, plaintiff's property was inspected again on August 30, 2012. Where the inspector assessed that deficiencies persisted, plaintiff was notified by

3

letter dated September 5, 2012, that he would face a civil penalty of $100 for August 31, 2012, and $25 per day thereafter until his property was brought in compliance with the order to repair. (DE 35-9). Under separate cover, defendant Bent notified plaintiff of his right to appeal civil penalties to the Community Appeals Board. (DE 35-10). Plaintiff filed the appeal, which appeal was heard September 27, 2012. (DE 35-11). The Community Appeals Board affirmed the civil penalties, and, as before, advised of plaintiff's right to appeal the decision to superior court within 15 days. (Id.). Plaintiff did not appeal to superior court.

Finally, plaintiff received from defendant Rocky Mount a public nuisance violation notice dated July 5, 2013. (DE 35-12). The notice allowed plaintiff seven days to remove from his property overgrowth, a travel trailer, tires, wood, doors, metal, plastic, trash, and other miscellaneous debris. (Id.). The notice advised that if plaintiff failed to take corrective action as directed, Rocky Mount would cause the necessary work to be completed at plaintiff's expense and estimated that such repairs would cost plaintiff $1055.00. (Id.). The notice advised plaintiff of his right to appeal the notice to the Community Appeals Board. (Id.). Plaintiff did not appeal the notice.

On August 28, 2013, defendant Bent, accompanied by W.T. Mayfield ("Mayfield"), a Rocky Mount police officer, arrived at plaintiff's property to supervise removal of debris from plaintiff's property by a contractor. Plaintiff attempted to remove items from a storage unit or travel trailer, in violation of Mayfield's order that plaintiff must not interfere with removal of debris from the property. (DE 35-3 ¶ 11–12). On this basis, Mayfield arrested plaintiff for resisting a public officer, in violation of N.C. Gen. Stat. § 14-223. (DE 35-3 ¶ 13).

This action followed. As of defendants' answer and counterclaim, plaintiff's daily civil

penalties added to $50,959.13. (DE 35-2 ¶ 28). In addition, nuisance abatement pursuant the July 5, 2013, public nuisance violation notice resulted in $1,975.99 costs.

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to

5

be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.    Analysis

   1.    Race Discrimination Claims

Plaintiff's race discrimination claims arise under 42 U.S.C. §§ 1981 ("section 1981"), 1982 ("section 1982"), 1983 ("Section 1983"), & 3604. Sections 1981 and 1982 establish rights to make contracts and own property free of race discrimination. See Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006). Section 1983 provides a cause of action to redress violation of a right secured by the Constitution or laws of the United States by state official acting under color of state law. Chapman v. Houston Welfare Rights Org., 442 U.S. 600, 617 (1979). As pertinent here, plaintiff's section 1983 claims allege violations of the Fourteenth Amendment Equal Protection Clause which forbids discrimination solely and explicitly on the basis of race, Trump v. Hawaii, 138 S.Ct. 2392, 2423 (2018) (abrogating Korematsu v. United States, 323 U.S. 214 (1942)), and forbids

6

any facially neutral law enacted or enforced with a discriminatory purpose. United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886)). Finally, plaintiff alleges violations of the Fair Housing Act, 42 U.S.C. § 3604, et seq., which prohibits race discrimination in housing sales, rentals, and formulation of the terms of same.[2]

While each alleged cause of action addresses race discrimination in a slightly different context, each requires proof of intentional discrimination. Absent direct evidence, such claims are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n. 7 (4th Cir. 2002) (applying the McDonnell Douglas framework to § 1981 claims); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 448 (2008) (noting that §§ 1981 and 1982 are construed alike); McCray v. Pee Dee Regional Transp. Auth., 263 F. Appx. 301, 305 (4th Cir. 2008) (Equal Protection claims); Corey v. Secretary, United States Dept. of Housing & Urban Development, 719 F.3d 322, 325 (4th cir. 2013) (Fair Housing Act claims).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). If plaintiff succeeds in doing so, an inference of discrimination is allowed, and the burden shifts to defendant to produce evidence that challenged action was undertaken for a "legitimate, nondiscriminatory reason." Id. This is a burden of production, not persuasion, and so it involves no credibility assessment. Id. If the defendant carries this burden, the presumption of discrimination disappears, and plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Id. at 143.

---

[2] Because, as described in more detail below, plaintiff fails to produce any evidence of race discrimination, the court assumes without deciding that the Fair Housing Act applies, not only to landlords, but also to municipal regulatory bodies and their officers, including defendants.

The burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). As such, "a plaintiff's prima facie case, combined with sufficient evidence to find that the [defendant]'s asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlawfully discriminated." Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000) (citing Reeves, 530 U.S. at 148).

Plaintiff's race discrimination claims fail because, aside from plaintiff's unsupported and conclusory allegations, nothing in the record supports a prima facie case of discrimination. That is, there is no evidence in the record that defendants enforced the Rocky Mount housing code less strictly against non-black residents. Indeed, plaintiff's verified complaint contains no allegation of any instance where defendant treated a non-black resident differently than plaintiff. Plaintiff's other evidence, including letter addressed to Lamont Wiggins, suffers the same deficiency. (See DE 38 at 3–7). At most, the complaint summarizes a set of unremarkable formal proceedings and adds accusations of race discrimination that rest on no factual basis. (See DE 4 ¶¶ 1–30). For this reason, each of plaintiff's race discrimination claims fail at the first step of the McDonnell Douglas test.

2. Unlawful Seizure Claim and State Law Torts

Plaintiff alleges a claim of unreasonable seizure in violation the Fourth Amendment through the vehicle of section 1983, arising from plaintiff's arrest on August 28, 2013. Plaintiff's state law tort claims of assault, battery, and false imprisonment arise from the same facts; thus, the court analyzes these claims together.

Claim that defendant Bent's August 28, 2013, entry onto plaintiff's property was unlawful rests on the premise that assessments of the condition of plaintiff's property were tainted by race

discrimination and substantively incorrect. The court now has ruled against plaintiff as to the former issue, and, for reasons that follow, the latter issue is subject to issue preclusion.

The doctrine of collateral estoppel or issue preclusion precludes repeat litigation of discrete issues of fact. McHan v. Comm'r, 558 F.3d 326, 331 (4th Cir. 2009). "[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate . . . federal court must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (internal quotations omitted).

North Carolina courts afford preclusive effect to administrative decisions where the agency renders a final decision on the merits; identical issues are involved; the issues was actually litigated in the prior suit and necessary to the decision; and the issue was actually determined. State v. Summers, 351 N.C. 620, 622 (2000); see Maines v. City of Greensboro, 300 N.C. 126, 133 (1980) (issue preclusive effect afforded to administrative decisions by municipal agency).

Defendants have submitted unrebutted documentary evidence of proceedings before Rocky Mount Code Enforcement and the Community Appeals Board. The documents reflect that plaintiff received ample notice of proceedings and had opportunity to challenge, and did challenge, Rocky Mount's assessments of non-compliance with the housing code. (See DE 35-6, 35-7, 35-8, 35-9, 35-10, 35-11, 35-12, 35-13). Although plaintiff never exercised his rights of appeal to the North Carolina superior courts, plaintiff was notified of such rights. (See DE 35-8, 35-11). Upon expiration of the deadline to appeal, Rocky Mount's decisions became final. N.C. Gen. Stat. 160A-446(e).

In sum, the elements of issue preclusion are met in this instance with respect to substantive

correctness of defendant Rocky Mount's assessments of civil fines and costs of nuisance abatement due to housing code violations at plaintiff's property. That is, defendant Rocky Mount issued final decisions, on issues now before this court, which were actually litigated, and those issues were actually determined. See Summers, 351 N.C. at 622. Thus, any challenge to Rocky Mount's assessment that plaintiff's property was not in compliance with the housing code is issue precluded. Therefore, where defendant Bent was, at the relevant time, the proper authority figure to supervise abatement of a nuisance, there is no issue defendant Bent's entry onto plaintiff's property was a lawful exercise of that authority.

Plaintiff does not dispute the factual basis for defendants' assertions that plaintiff obstructed Bent's efforts to remove certain items in violation of a direct order from a police officer. (DE 4 ¶ 20 ("[Plaintiff] was arrested . . . after he forbade Defendant Bent's entry onto his property and after he attempted to remove his family heirlooms from the travel trailer prior to the city seizing same.") (emphasis added)). This aspect of the undisputed account of plaintiff's conduct establishes requisite probable cause to justify arrest under the Fourth Amendment where resisting a public officer is a crime in North Carolina. See N.C. Gen. Stat. § 14-223. Moreover, a police officer is not liable for torts of assault, battery, or false imprisonment where, as her, the alleged tort was committed in the course of lawful exercise of authority and without excessive force. See Williams v. City of Jacksonville Plice Dep't, 165 N.C. App. 587, 596–97 (2004). For theses reasons, plaintiff's remaining section 1983 claims and state law tort claims fail.

Plaintiff argues that some of the items defendants removed constituted valuable family heirlooms that should not have been destroyed. However, the issue presented is whether any defendant violated plaintiff's Fourth Amendment rights or perpetrated assault and/or battery.

10

Plaintiff's four counts allege no trespass to chattels, and, moreover, as held, any issue regarding whether such items were subject to removal is precluded by Rocky Mount Code Enforcement 's final determination that the items must be removed.

4.      Fifth Amendment Takings

Finally, plaintiff asserts a claim that defendant effected a taking of his property without just compensation, in violation of the Just Compensation Clause of the Fifth Amendment. However, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson Cty. Reg'l. Planning Comm'n. v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985); see Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013). Nothing in the complaint, nor any evidence of record, suggests that plaintiff sought compensation for any alleged takings of his property. Therefore, this claim is dismissed as unripe.

In sum, plaintiff's race discrimination claims, asserted in counts I, II, parts of III, and IV, are dismissed because the undisputed facts fail to establish a prima facie case of race discrimination. Plaintiff's claims of unlawful seizure, asserted also in count III, and state law torts, asserted in counts V and VI, are dismissed where, on the undisputed facts, August 28, 2013, entry onto plaintiff's property and subsequent arrest were legally justified. Finally, plaintiff's takings claim, asserted in remainder of court III, is dismissed as unripe.

5.      Counterclaim

Plaintiff's opposition to defendant Rocky Mount's counterclaim rests on assertions, rejected above, that assessments of civil penalties are discriminatory in nature. Plaintiff does not dispute other factual premises of Rocky Mount's civil penalties. Accordingly, where the court here rejects

11

plaintiff's claims of race discrimination, there is no issue Rocky Mount is entitled to judgment on its counterclaim for $52,935.12.

Rocky Mount's prayer for relief includes request for interest. Decision to award pre-judgment is committed to the discretion of the district court. See Maksymchuk v. Frank, 987 F.2d 1072, 1077 (4th Cir. 1993). In this instance, where plaintiff proceeds in forma pauperis, the court declines to award pre-judgment interest. Post-judgment interest, however, is mandatory and "shall be calculated from the date of the entry of judgment." 28 U.S.C. § 1961. Accordingly, post-judgment interest shall accrue at the legal rate from date of entry of this order until the judgment is paid in full.

## CONCLUSION

For reasons noted, defendant's motion for summary judgment, (DE 33) is GRANTED. Plaintiffs claims are DISMISSED. Defendant Rocky Mount is AWARDED $52,935.12, plus post-judgment interest at the legal rate until the judgment is paid in full. The clerk is DIRECTED to close this case.

SO ORDERED, this the 5th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge